(16 App. Div. 421.)

## MUNROE et al. v. BONANNO.

(Supreme Court, Appellate Division, First Department.    April 23, 1897.)

MONEY HAD AND RECEIVED—PAYMENT UNDER MISTAKE OF FACT.

Defendant for several years had bought goods in Europe through one R., and paid for them by sending to R. letters of credit issued by plaintiffs' New York bank, authorizing R. to draw on their Paris bank. When goods were shipped to defendant, R. would draw on plaintiffs' Paris bank for the amount, and the Paris bank would draw on defendant through the New York bank, sending with the drafts the bills of lading and invoices. R. held a similar letter of credit procured by one H., also doing business in New York, but not connected with defendant. A draft was drawn on plaintiffs' Paris bank for the amount of a shipment to H., and the bank was advised that such draft was drawn under H.'s letter of credit. By mistake, the bank drew on defendant, instead of H. Defendant accepted the draft, and paid it when plaintiffs informed him that the goods had arrived. Afterwards it was discovered that the goods had been shipped to H., and that they were spoiled. *Held*, that defendant was entitled to recover the amount of such drafts from plaintiffs as money had and received.

Appeal from trial term, New York county.

Action by John Munroe and others against Domenico Bonanno. From a judgment entered on a verdict rendered by direction of the court in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Gilbert P. Coleman, for appellant.
Charles E. Rushmore, for respondents.

WILLIAMS, J.  The action was brought on five drafts, four of which were paid before the trial, and liability upon the other was admitted upon the trial. The defendant interposed counterclaims for money had and received. The court dismissed the counterclaims, and directed a verdict for the plaintiffs for the amount of the draft upon which liability was conceded. The questions here arise upon the dismissal of the counterclaims. The defendant accepted and paid the plaintiffs' two drafts. He claimed on the trial that these drafts were so accepted and paid under a mistake of fact, that there was no consideration for the acceptances or payments, that the money was therefore had and received to his use, and that he was entitled to recover the same back. In order to correctly determine this appeal, we must understand the facts in detail. The plaintiffs were bankers, with a house in Paris under the name of Munroe & Co., and a house in New York under the name of John Munroe & Co. The defendant was a fruit commission merchant in New York City, and an importer of foreign fruits. One of his correspondents was C. Falamo Rossi, of Messina, Italy. The defendant had done his banking business through plaintiffs' houses for many years, and a definite course of business had grown up between the parties and the correspondent of defendant in Europe. The correspondent was authorized to draw on the Paris house, under letters of credit, at such times and in such amounts,

not exceeding the limit of the letters, as he might see fit. All drafts were accompanied by bills of lading and consular invoices for fruit, which, at a valuation fixed by the letter of credit, equaled the faces of the drafts. At the time of drawing such drafts the correspondent advised the defendant of the drawing, and sent him a memorandum of the numbers and marks of the boxes included in the shipments, so that the defendant could identify the property when it arrived in New York. Upon receipt of the drafts, the Paris house drew drafts upon the defendant, in favor of the New York house, for the same amounts, and forwarded the latter drafts to the New York house, with the bills of lading and consular invoices received from the correspondent. The drafts were presented to defendant in New York, and accepted by him; and the defendant received the bills of lading and consular invoices, and gave back trust receipts, when the vessel arrived on which goods were shipped. When the drafts and acceptances came due, they were paid by the defendant. When the vessel on which the goods were shipped arrived in New York, the defendant, having received the advice and marks and numbers from the correspondent, identified and took possession of the property. This was the general course of business that had grown up, and under which the parties were acting in reference to the transactions involved in this action. May 17, 1893, the defendant procured from the plaintiffs a letter of credit in favor of Rossi for 25,000 francs, to be drawn upon by him against shipments of lemons and oranges. The number of the letter was 7,217, and the Paris house gave Rossi information of this letter of credit by letter of May 30, 1893. This same Rossi held another letter of credit upon plaintiffs' Paris house for 10,000 francs, procured by Hirzel, Feltman & Co., of New York City, to be used in substantially the same way as the one procured by the defendant. These New York parties had nothing to do with each other, but the two letters of credit were held by Rossi as correspondent for each of the two parties. The Paris house notified Rossi of the Hirzel, Feltman & Co. letter of credit, by cable, June 2, 1893. Holding these two letters of credit (one numbered 7,217, and the other known as "Cable Credit of June 2"), Rossi, on the 5th of June, bought, as correspondent for Hirzel, Feltman & Co., two separate bills of goods, and took separate bills of lading and consular invoices therefor, and drew two drafts on plaintiffs' Paris house (one for 7,200 francs and the other for 2,800 francs), and forwarded these two drafts, with the bills of lading and consular invoices annexed, to the Paris house, inclosing each in a letter, wherein he stated the drafts, respectively, were drawn according to cable credit of June 2d, which was the Hirzel, Feltman & Co.'s, and not the defendant's, letter of credit. The Paris house thereupon drew the two drafts in question here, not upon the firm of Hirzel, Feltman & Co., as they should have done, but upon this defendant. This was the first mistake made in the transaction, and, if this mistake had not been made, there would have been no trouble about the matter. These drafts were directed to defendant, and expressly stated that they were drawn against letter

of credit No. 7,217, which was the defendant's, and not Hirzel, Feltman & Co.'s, letter. These drafts, with the accompanying bills of lading and consular invoices, were forwarded to plaintiffs' New York house, and were presented to and accepted by defendant June 23, 1893. The bills of lading showed that the property was shipped by the James Turpie, and the vessel arrived in New York July 8 or 10, 1893. The defendant did not receive from Rossi any advices as to these purchases and shipments or drafts, or marks or numbers of the boxes. These were evidently sent to Hirzel, Feltman & Co. They had the marks and numbers, at all events. The first the defendant saw of the bills of lading and the consular invoices was after the goods arrived in New York. It often occurred that the drafts came, and were accepted by the defendant, a week before the advices were received from Rossi; so that there was nothing surprising in the advices not having been received before the drafts were accepted in these particular cases. The first notice the defendant had as to what vessel the property was shipped upon was through his clerk, Freund. This clerk was in plaintiffs' New York house on other business, when he was informed that the ship had arrived with the goods on board for defendant, and that defendant had accepted the drafts for these goods, and he was asked if the defendant was not going to take up the bills of lading. The bills of lading were thereupon taken up by the defendant. The defendant did not have the marks or numbers, and could not identify the goods. Freund, the agent, learned that Hirzel, Feltman & Co. had them, and he went to their office and got them. They told the defendant's agent that they had received the marks and numbers, but no invoices. Freund told him that the defendant had the drafts, and so they gave him the marks and numbers; supposing, as Freund says, that the goods were for the defendant, because he had the drafts. Hirzel, Feltman & Co. said nothing to Freund about the goods having been consigned to them. The goods were then identified and examined, were found to be worthless, and were abandoned on the dock. The acceptances by defendant became due, and were paid to plaintiffs, one on July 13, 1893, and the other on July 21, 1893. Subsequently Rossi informed defendant that the goods were not shipped for him, but were bought and shipped for Hirzel, Feltman & Co. This was 30 days after the goods arrived in New York,—about the 8th or 10th of August, 1893.

The motion to dismiss was made and granted at the close of defendant's evidence, and no evidence was given in contradiction by the plaintiffs. The question is therefore whether, upon the view of the evidence most favorable to the defendant, he was entitled to recover back the money paid upon the two drafts. There seems to be no dispute that the acceptance and payment of the drafts were made under a mistake of fact. The plaintiffs' Paris house made a mistake. It was not claimed they intentionally drew the drafts upon the wrong person. They had no right to draw the drafts upon defendant, and we are unable to see how, having made the mistake, and having secured the defendant's money by mislead-

ing him, they should be allowed to retain the money, to which they never had any right whatever. The defendant never misled the plaintiffs in any way. He supposed the drafts were properly drawn, that Rossi had bought the goods and shipped them for him, and had drawn his drafts therefor upon the plaintiffs' Paris house; and it would be a great injustice to allow the plaintiffs to retain money which they obtained from defendant through a mistake which he was not at fault about, but which was caused solely by the plaintiffs' own mistake and neglect and unauthorized act. It is suggested that the defendant was negligent and careless in accepting the drafts and paying them when the advices and marks and numbers had been sent up to him. But, under the evidence, we cannot say that he was bound to rely upon a failure to get the advices, marks, and numbers from Rossi, rather than upon the fact that the drafts had been drawn upon him; and certainly the plaintiffs ought not to be heard to allege carelessness against the defendant by reason of his reliance upon their significant representations to him, by drawing the drafts and procuring their acceptance and payment by him. There is no ground for saying the defendant should be defeated in his claim to recover back the money paid the plaintiffs upon any theory that he assumed to purchase the property from the plaintiffs. Even if such a construction could be given to the transaction, the purchase was made under a mistake of fact induced and brought about by the plaintiffs, and the property was entirely worthless, and there was no consideration for the acceptance and payment of the drafts. Upon any view of the case, we come back to the proposition that the money was received by the plaintiffs from the defendant under a mistake of fact induced by the plaintiffs, and without any consideration in fact.

We think the verdict was erroneously directed by the court, and that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.